UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM CODY,<br><br>           Plaintiff,<br><br>   vs.<br><br>DOUG CLARK, in his individual capacity; DANIEL SULLIVAN, in his individual and official capacity; JENNIFER DREISKE, in her individual capacity; BRITTNEY LENGKEEK, in her individual and official capacity; SAM BADURE, in his individual and official capacity; JEFFREY ELTON, in his individual and official capacity; JENNIFER FENOLIO, in her individual and official capacity; TROY PONTO, in his individual and official capacity; TIM REISCH, in his individual capacity; DARIN YOUNG, in his individual capacity; JOHN BENTING, in his individual and official capacity; MIKE LEIDHOLT, in his individual capacity; NYLA SPRINKEL, in her individual and official capacity; JOHN/JANE DOES, in their individual and official capacities; MARY CARPENTER, in her individual and official capacity; KELLIE WASKO, in her individual and official capacity, CHAD ROTERT, in his individual and official capacity,<br><br>           Defendants. | 4:22-CV-04010-KES<br><br><br>ORDER GRANTING PLAINTIFF'S MOTION TO RECONSIDER IN PART, GRANTING DEFENDANTS' MOTION FOR RELIEF FROM ORDER IN PART, AND GRANTING PLAINTIFF'S MOTIONS FOR ASSISTED SERVICE |

      Plaintiff, William Cody, an inmate at the South Dakota State Penitentiary, filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Docket 1. This court screened Cody's complaint under 28 U.S.C. § 1915A, dismissing

it in part and directing service on defendants in part. Docket 14. Cody now moves for partial reconsideration of that screening order, seeking clarification of one claim that survived screening and reconsideration of another claim that this court dismissed at the screening stage. Docket 17.

Cody also filed a motion asking this court to require defendants provide him with cross-reference tables for the authorities cited in defendants' motion for summary judgment because that motion cites to Westlaw and Cody only has access to LEXIS/NEXIS. Docket 60. Cody also sought cross-reference tables for page numbers in docket entries cited in defendants' briefs. *Id.* This court granted Cody's motion. Docket 61. Defendants now move for relief from the order granting Cody's motion. Docket 62.

Cody has also filed two motions for assisted service. Dockets 19, 25. Cody seeks assistance serving four defendants who are no longer employed with the DOC and Dr. Mary Carpenter, the Medical Director for Correctional Health Care. *See* Docket 19 at 1; Docket 25 at 1; Docket 37 ¶ 2.

I.   **Cody's Motion for Reconsideration**

Cody's motion for reconsideration asks this court to clarify or reconsider two claims at the screening stage. Docket 18 at 1. First, he asks this court to clarify its order regarding his Fifth Amendment Takings Clause claim regarding economic impact payments. *Id.* at 3-4. Second, he asks this court to reconsider its dismissal of his Eighth Amendment conditions of confinement claim regarding prison noise that denied him the ability to sleep. *Id.* at 5-11.

Cody seeks relief under Federal Rules of Civil Procedure 52(b), 59(e), 60(a), 60(b)(2), and 60(b)(6). *Id.* at 2. The Eighth Circuit Court of Appeals has traditionally "instructed courts to consider [motions for reconsideration] either under Rule 59(e) or Rule 60(b)." *Moberly v. Midcontinent Commc'n*, 2010 WL 11681663, at *1 (D.S.D. Aug. 2, 2010) (citation omitted). Rule 60(b) authorizes a court to relieve a party from a final judgment or order under the following circumstances:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

Rule 60(b)(2) does not apply here because while Cody does offer further argument as to his claim, he does not present evidence that could not have been discovered and presented in his complaint and prior supplements. *See* Docket 18 at 3-11. To obtain relief under Rule 60(b)(6), a party must show that "exceptional circumstances have denied the moving party a full and fair opportunity to litigate his claim and have prevented the moving party from receiving adequate redress." *Harley v. Zoesch*, 413 F.3d 866, 871 (8th Cir. 2005) (citation omitted). Here, an improper dismissal at the screening stage would deny Cody a full and fair opportunity to litigate the claims in question.

3

Thus, this court will consider Cody's motion for reconsideration under Rule 60(b)(6).

### A.  Takings Clause Claim

In his initial complaint, Cody alleged that defendants' garnishment of his economic impact payments violated the Takings Clause of the Fifth Amendment. Docket 1 ¶ 168. The Takings Clause is violated when private property is taken for public use without just compensation. U.S. Const. amend V. "[C]onsideration other than cash . . . may be counted in the determination of just compensation." *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 151 (1974) (citing *Bauman v. Ross*, 167 U.S. 548, 584 (1897)).

This court found that Cody's Takings Clause claim survived § 1915A screening but clarified that a taking would only have occurred if the garnished payments did not reduce Cody's debt owed to the South Dakota Department of Corrections (SD DOC). Docket 14 at 35-37. Specifically, this court cited *Hayes v. Graves*, 2022 WL 822881, 2022 U.S. Dist. LEXIS 47001 (E.D. Ark. Mar. 16, 2002), an Eastern District of Arkansas case that considered this issue. In *Hayes*, the court found that the Takings Clause is violated by the garnishment of economic impact payments when inmates are not provided compensation for the garnished funds. *See* 2022 WL 822881, at *5-6, 2022 U.S. Dist. LEXIS 47001, at *9-11. Thus, the *Hayes* court concluded that "prisoners are provided with a 'dollar-for-dollar benefit' when their stimulus funds are used to pay off their existing court fines, fees, costs, or restitution." 2022 WL 822881, at *5, 2022 U.S. Dist. LEXIS 47001, at *10-11.

This court ruled that the principle stated in *Hayes* also applies when economic impact payment funds "are put towards debts owed to the penitentiary, because the prisoner receives a reduction in debt owed." Docket 14 at 36 (citation omitted). Thus, to the extent that Cody's economic impact payments were garnished to pay down existing debt, he received a benefit, and the Takings Clause was not violated. *See id.* at 36-37. Now, Cody argues that because the terms "debts owed" and "debt owed" do not appear in *Hayes* and because the words "debt" and "debts" only appear in reference to an Arkansas state statute, garnished funds put towards debt owed to the penitentiary could still violate the Takings Clause. Docket 18 at 4. Cody further argues that *Hayes* stands for the proposition that "[economic impact payments] may *only* be used to pay existing court fines, fees, costs, and court ordered restitution." *Id.* (cleaned up).

In finding *Hayes* instructive, this court cited with approval the principle that "prisoners receive just compensation when stimulus funds are put towards existing court fines, fees, costs, or restitution." Docket 14 at 36 (citation omitted). But this is not an exhaustive list, and the Takings Clause is only violated when an inmate's funds are garnished "without just compensation." *See* U.S. Const. amend. V. A dollar-for-dollar reduction in debt owed to the penitentiary is just compensation, similar to a dollar-for-dollar reduction in court fines, fees, costs, or restitution owed. The key question is whether the inmate receives a benefit in the reduction of an amount owed that is equal to the quantity of funds garnished. Thus, to the extent that Cody asks

5

this court to reconsider its ruling on his Takings Clause claim, that motion (Docket 17) is denied.

### B. Eighth Amendment Conditions of Confinement Claim

In supplements to his initial complaint, Cody alleged that defendants Sam Badure, Chad Rotert, and Dan Sullivan violated his Eighth Amendment right to be free from cruel and unusual punishment by being deliberately indifferent to the sleep deprivation caused by the volume of other inmates' televisions. *See* Docket 8-1 ¶ 30; Docket 12-1 ¶¶ 8-11. This court dismissed Cody's claim for deliberate indifference, finding that noisy televisions did not constitute inhumane conditions. Docket 14 at 43. Further, this court found that defendants were not deliberately indifferent because Badure told Cody to speak with an officer when this issue arose, Rotert assured Cody that the noise was not escalating and that he would discuss it with Badure, and Sullivan informed Cody that he had delegated responsibility for this issue to Rotert. *Id.*

"[T]he Constitution 'does not mandate comfortable prisons'; it prohibits 'inhumane ones.' " *Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). The United States Supreme Court has clarified that only "extreme deprivations" that deny "the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (internal quotation omitted). The Supreme Court has listed as basic human needs "food, clothing, shelter, medical care, and reasonable safety[.]" *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (citation omitted).

6

In order to prevail on an Eighth Amendment conditions of confinement claim, a prisoner must prove that (1) objectively, the deprivation was sufficiently serious to deprive him of the minimal civilized measures of life's necessities or to constitute a substantial risk of serious harm to his health or safety; and (2) subjectively, the defendants were deliberately indifferent to inmate health or safety. *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998) (citing *Farmer*, 511 U.S. at 834). An Eighth Amendment challenge to conditions of confinement must examine the totality of the circumstances. *Villanueva v. George*, 659 F.2d 851, 854 (8th Cir. 1981) (en banc). Even if no single condition would be unconstitutional in itself, the cumulative effect of prison conditions may subject inmates to cruel and unusual punishment. *See id.*; *see also Tyler v. Black*, 865 F.2d 181, 183 (8th Cir. 1989).

Cody argues that the noisy televisions are more than a "discomfort" and that "[s]leep deprivation has long been recognized as an effective tool of torture[.]" Docket 18 at 6 (first alteration in original) (quoting *Gardner v. Andrews*, 2018 U.S. Dist. LEXIS 85668, at *6 (E.D. Ark. Apr. 26, 2018)). He cites several cases for the proposition that an Eighth Amendment claim can be brought for excessive noise in a prison setting, including a D.C. Circuit Court of Appeals case that discussed "excessive noise from unregulated television volume[.]" *Id.* (citing *Inmates of Occoquan v. Barry*, 844 F.2d 828, 848 (D.C. Cir. 1988)). He further argues that "sleep undoubtedly counts as one of life's basic needs[.]" *Id.* at 7 (quoting *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999)). Cody also correctly notes that the severity of a deprivation depends not

7

only on the conditions in question but also the length of time that an inmate must endure those conditions. *Id.* at 7-8. He alleges that the excessive noise began in January 2022 and continues today. *Id.* at 8.

In *Inmates of Occoquan*, the D.C. Circuit ultimately found that the district court exceeded its authority in finding that "a variety of deficiencies . . . warranted a global remedy . . . , rather than a remedy mandating specific corrections of specific problems[.]" 844 F.2d at 841. Thus, the D.C. Circuit reversed the lower court's imposition of a population cap on the prison because overcrowding only "*exacerbated* the effects of numerous deficiencies, which taken together, violated the Constitution." *Id.* at 842. In doing so, the D.C. Circuit disagreed with the lower court's choice of remedy but did not challenge its finding that "sustained excessive noise levels increase stress levels and pose a significant risk to inmates' physical and mental health." *Id.* at 830 (quoting *Inmates of Occoquan v. Barry*, 650 F. Supp. 619, 621 (D.D.C. 1986), *rev'd*, 844 F.2d 828).

This court agrees with Cody that sustained excessive noise and sleep deprivation can violate the Eighth Amendment, especially given the fact that the noise in question has lasted for months. Thus, because Cody has alleged facts sufficient to show that he has been and continues to be deprived of the minimal civilized measures of life's necessities as required by *Simmons*, he must also show that defendants have been deliberately indifferent to that deprivation. *See* 154 F.3d at 807 (citing *Farmer*, 511 U.S. at 834).

8

Cody argues that Badure, Rotert, and Sullivan were aware of the excessive noise because he sent letters and informed them in person of the noise in January and February of 2022. Docket 18 at 9. He claims that officers in his hall refused to do anything about the noise even though Badure told him to tell an officer about the noise when it occurred. *Id.* at 9-10. He also claims that although Rotert told him that he might be able to resolve the noise issues, they were never resolved. *Id.* at 10.

Cody alleges that Badure, Rotert, and Sullivan were aware of the excessive noise issue. *Id.* at 9-11. He further alleges that these defendants had and continue to have the authority to address the issue. *See id.* While all three appear to have at least informed Cody that the issue was being addressed, Cody alleges that the noise continues and that no actions to resolve the noise have been taken. *See id.*; *see also Gray v. Hardy*, 826 F.3d 1000, 1009 (7th Cir. 2016) ("Knowingly persisting in an approach that does not make a dent in the problem is evidence from which a jury could infer deliberate indifference."). At the screening stage, this court cannot say with certainty that the actions of the three defendants do not constitute deliberate indifference. Thus, Cody's motion for reconsideration regarding his Eighth Amendment conditions of confinement claim for excessive noise (Docket 17) is granted, and this claim against Badure, Rotert,[1] and Sullivan in their individual capacities and in their official capacities for injunctive relief survives § 1915A screening.

---

[1] The court notes that Rotert was dismissed from this lawsuit in the previous screening order and has not yet been served. *See* Docket 14 at 46-50.

9

## II.     Defendants' Motion for Relief from Order

Defendants move for relief from this court's order to provide Cody with cross-references between Westlaw and LEXIS/NEXIS and for cited docket pages. Docket 62. Defendants seek relief under Federal Rule of Civil Procedure 60(b)(6). *Id.* at 1-3. Again, relief is warranted under Rule 60(b)(6) when "exceptional circumstances have denied the moving party a full and fair opportunity to litigate his claim and have prevented the moving party from receiving adequate redress." *Harley*, 413 F.3d at 871 (citation omitted). Defendants correctly note that Cody's motion was granted before defendants were able to respond. *See* Docket 62 at 3. Thus, this court will consider defendants' arguments in opposition to Cody's motion.

Defendants first argue that Cody does not have the right to LEXIS/NEXIS cross-references because a lack of access to these citations does not violate his First Amendment right of access to the courts. *Id.* at 3-8. They argue that inconvenience alone does not violate this right and that Cody must show that he was "prevented . . . from litigating [his] claim[s]." *Id.* at 7 (quoting *Duwenhoegger v. King*, 2012 WL 1516865, at *6, 2012 U.S. Dist. LEXIS 63333, at *20 (D. Minn. Feb. 13, 2012)). Defendants further argue that "Cody has not and cannot make any such showing." *Id.* at 8.

Defendants state the standard for a 42 U.S.C. § 1983 claim for denial of an inmate's First Amendment right to access the courts. If Cody were bringing such a claim, defendants would be correct to make such an argument in a motion to dismiss or a motion for summary judgment. *See Johnson v. Missouri*,

10

142 F.3d 1087, 1089 (8th Cir. 1998) (citing *Lewis v. Casey*, 518 U.S. 343, 353 (1996)). But Cody's complaint did not state a claim for violation of his First Amendment right to access the courts, and his motion requesting cross-references did not seek to amend his complaint to add such a claim. *See* Dockets 1, 60. Instead, he has filed a motion seeking "a fair and equitable opportunity to rebut or otherwise respond to Defendants' summary judgment pleadings[.]" Docket 60 at 2. Whether Cody has a constitutional right to be provided cross-references is a different question than whether this court has the discretion to grant Cody's motion.

Defendants cite *Cox v. LNU*, a District of Kansas case, for the proposition that the right to access the courts "does not 'allow inmates the right to select the method by which access will be provided.'" Docket 62 at 5 (quoting 924 F. Supp. 2d 1269, 1273 (D. Kan 2013)). Defendants argue that the District of Kansas denied the inmate plaintiff's motion for copies of caselaw cited by the opposing party because there was "no generalized right to case law cited by opponents" and because the plaintiff was "seek[ing] an ability to litigate his case that goes beyond his right to access the courts." *Id.* at 6-7 (quoting *Cox*, 924 F. Supp. 2d at 1276, 1279).

The holding in *Cox* is more complicated and more sympathetic to Cody than defendants recognize. *See* 924 F. Supp. 2d at 1273-79. In *Cox*, the District of Kansas considered the plaintiff's motion under both a local rule that governed the provision of unpublished decisions cited in briefs to opposing parties and under "the general authority to regulate practice pursuant to

11

[Federal Rule of Civil Procedure] 83(b)." *Id.* at 1274-75. Rule 83(b) allows for regulation of practice "in any manner consistent with federal law, rules adopted under 28 U.S.C. §§ 2072 and 2075, and the district's local rules." The court agreed with defendants that plaintiff's First Amendment right to access the courts was not violated because he had no generalized right to caselaw but found that this did not resolve the motion because of the authority granted by Rule 83(b) and the relevant local rule. *Id.* at 1276.

After denying plaintiff's motion for case law under the local rule because the plaintiff failed to identify specific unpublished decisions to which he lacked access and because defendants had made efforts to make decisions available, the court considered plaintiff's motion under Rule 83(b). *See id.* at 1277-78. The court began by noting that because "no federal or local rule, including [the District of Kansas local rule discussed above], address providing copies of published decisions to an adversary, the Court may exercise its discretion under Fed. R. Civ. P. 83(b) to regulate such production." *Id.* at 1278. In fact, the court noted that a different judge had previously granted a similar motion brought by the same plaintiff. *Id.* The court found no need to compel provision of case law to the plaintiff because defendants provided more information regarding plaintiff's access to caselaw than they did in response to the previous motion. *Id.* Ultimately, the court found that the plaintiff had "a reasonable means to obtain the published case law that he desire[d]." *Id.*

This court finds *Cox* instructive and finds it has the authority to compel defendants to provide caselaw to Cody under Rule 83(b), especially where Cody

has no other means to access the caselaw in question. *See id.* Defendants argue that "Cody has more than 'reasonable means' to access the cases cited" because he can search for these cases on LEXIS/NEXIS and that any difficulties faced by this process are merely "minor inconvenience[s.]" Docket 62 at 7. But this court's authority to regulate practice under Rule 83(b) is limited by federal law and the local rules, and defendants do not identify a federal law or local rule violated by this court's order. *See id.* at 3-8.

Defendants next argue that they have no means to access LEXIS/NEXIS citations because they only have access to Westlaw. *Id.* at 8. Defendants' counsel states that "[s]ince Westlaw is the service provider for the Attorney General's Office, counsel does not have access to the Lexis-Nexis cites now requested by Cody. Defendants cannot provide what they do not have." *Id.* The Attorney General's Office and the South Dakota State Penitentiary are both arms of the state of South Dakota. Although this court recognizes that the current legal database contracts in question may not be compatible, this court is skeptical of a practice where one arm of the state provides inmates access to one database, another arm of the state provides defendants' counsel access to another database, and then that counsel argues that the resultant burdens in accessing caselaw, created by the state's choice of legal databases, are to be borne by inmates. But in stating that they "cannot provide what they do not have[,]" defendants identify a larger problem. *See id.*

Although many cases are available on Westlaw and LEXIS/NEXIS, many cases are only accessible on one of the two databases. For example, defendants'

13

brief on this issue cites *Waterman v. Tippie*, a District of Kansas case. *Id.* at 5 (citing 2022 WL 17177369, at *2 (D. Kan. Nov. 23, 2022)). Although LEXIS/NEXIS contains orders from *Waterman*, the November 23, 2022, memorandum and order cited by defendants appears to be exclusive to Westlaw. Defendants cannot provide LEXIS/NEXIS citations that do not exist.

This court believes Cody should have some means to access cases cited by defendants. At the same time, this court recognizes that the work of figuring out which cases Cody can or cannot access should be his to do. Thus, Cody must provide a list of cases cited in defendants' briefs that he cannot access, and defendants must provide to Cody either LEXIS/NEXIS citations, along with cross-references for individual page citations, or paper copies of these cases that include Westlaw pagination.

Defendants also seek relief from this court's order that they provide cross-references for docket entry pages. *See id.* at 3 n.1. Defendants' briefs cite to global docket page numbers, rather than the page numbers for individual docket entries. For example, in their memorandum in support of their motion for summary judgment, defendants cite to the eighteenth page of this court's screening order as "Doc. 14, p. 320" rather than "Doc. 14, p. 18" or a similar format. *See* Docket 34 at 3 n.1.[2] Defendants also ask that, if they are not fully granted relief from this court's order, that this court "direct Cody to provide

---

[2] Aside from any issues this practice presents for Cody, the court finds defendants' citations to the record to be unnecessarily confusing and would appreciate a more straightforward citation method, such as citations to individual docket entry pages, moving forward.

counsel with the Docket page numbers to which he does not have access." Docket 62 at 3 n.1 (cleaned up).

This court believes it would be easier for defendants to provide cross-references for page ranges for cited documents already entered into the docket. For example, for Docket 14 cited in defendants' memorandum in support of their motion for summary judgment and discussed above, rather than provide page numbers for every citation to this document in the memorandum, defendants can simply state that pages 303 to 352 correspond with pages 1 to 50 of the document. Defendants shall do this for every document cited in their memorandum in support of their motion for summary judgment (Docket 34) and their memorandum in support of their motion for a protective order (Docket 54) that was not contemporaneously attached to those memoranda.[3]

Thus, defendants' motion for relief from this court's previous order (Docket 62) is granted to the extent described above. Cody must identify a list of cases cited in defendants' briefs that he cannot access. Then, defendants must provide to Cody either LEXIS/NEXIS cross-references or paper copies of Westlaw cases and cross-references for individual docket entry page numbers for cited docket entries not contemporaneously attached, rather than cross-references for each individual docket entry citation, for their memorandum in

---

[3] Defendants' memorandum in support of their motion for summary judgment cites frequently to documents that were filed as attachments to that memorandum by individual page or paragraph numbers. For instance, citations to Dr. Carpenter's affidavit are cited as "Carpenter Affidavit" followed by the paragraph number. *See, e.g.*, Docket 34 at 9. Because these citations provide more direction than global docket page numbers, they do not need to be cross-referenced.

support of their motion for summary judgment (Docket 34) and their memorandum in support of their motion for protective order (Docket 54) by **February 6, 2023**. Further, defendants must continue to follow these instructions in all future filings in this case. Beyond these modifications, defendants' motion for relief from order is denied.

### III. Cody's Motions for Assisted Service

Cody has filed two motions for assisted service. Dockets 19, 25. In his first motion, he asks for assistance serving Jennifer Dreiske, Tim Reisch, Darin Young, and Mike Leidholt, all of whom are no longer employed by the SD DOC. Docket 19 at 1. In his second motion, he asks for assistance serving Dr. Carpenter, whose address he does not have and cannot access. Docket 25 at 1. Cody claims that seeking personal information of non-inmates is a violation of SD DOC rules for inmates. Docket 20 at 2. He notes that this court has previously assisted him and other inmate plaintiffs in similar circumstances. *Id.* at 3 (citations omitted).

In one example cited by Cody, this court ordered the state defendants' attorneys, who had already appeared on behalf of the unserved defendants, "to provide the last known addresses for [those] defendants to the United States Marshals Service for service[.]" *See Hansen v. S.D. Dep't of Corr.*, 4:19-CV-04019-KES, Docket 44 at 4. Here, defendants have not opposed either motion. Thus, Cody's motions for assisted service (Dockets 19, 25) are granted. Defendants' counsel must provide the last known addresses for Dreiske,

Reisch, Young, Leidholt, and Dr. Carpenter to the United States Marshals Service for service by **February 6, 2023**.

Thus, it is ORDERED:

1. That Cody's motion for reconsideration (Docket 17) is granted in part and denied in part. Cody's Eighth Amendment conditions of confinement claim for excessive noise against Badure, Rotert, and Sullivan in their individual capacities and in their official capacities for injunctive relief survives § 1915A screening.

2. That the Clerk shall send a blank summons form and Marshals Service Form (Form USM-285) to Cody so that he may cause the complaint to be served upon defendant Rotert.

3. That Cody shall complete and send the Clerk of Court a summons and USM-285 form for defendant Rotert. Upon receipt of the completed summons and USM-285 forms, the Clerk of Court will issue the summons. If the completed summons and USM-285 forms are not submitted as directed, the complaint may be dismissed.

4. The United States Marshals Service shall serve the completed summons, together with a copy of the complaint (Docket 1), the supplemental complaints (Dockets 8-1 and 12-1), the initial screening order (Docket 14), and this order, upon defendant Rotert.

5. Defendant Rotert, as well as defendants Badure and Sullivan who are named in the Eighth Amendment claim discussed above, will serve and file an answer or responsive pleading to the complaint on

or before 21 days following the date of service or 60 days if the defendants fall under Fed. R. Civ. P. 12(a)(2) or (3).

6. That defendants' motion for relief from order (Docket 62) is granted in part and denied in part. Cody must identify a list of cases cited in defendants' briefs that he cannot access by **February 6, 2023**. Defendants must then provide to Cody either LEXIS/NEXIS cross-references or paper copies of Westlaw cases for all Westlaw citations contained within their memorandum in support of their motion for summary judgment (Docket 34) and their memorandum in support of their motion for protective order (Docket 54). Defendants must also provide to Cody cross-references for individual docket entry page numbers for cited docket entries not contemporaneously attached contained within these two memoranda. Defendants must provide these items by 30 days after Cody provides a list of cases he cannot access.

7. That Cody's motions for assisted service (Docket 19, 25) are granted. Defendants' counsel must provide the last known addresses for Dreiske, Reisch, Young, Leidholt, and Dr. Carpenter to the United States Marshals Service for service by **February 6, 2023**.

Dated January 5, 2023.

                        BY THE COURT:

                        /s/ *Karen E. Schreier*
                        KAREN E. SCHREIER
                        UNITED STATES DISTRICT JUDGE